IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RODNEY EUGENE SMITH, #2023547,   § <br> PETITIONER,   § <br>   § <br> v.   § <br>   § <br> LORIE DAVIS, DIRECTOR,   § <br> TEXAS DEPARTMENT OF   § <br> CRIMINAL JUSTICE,   § <br> CORRECTIONAL INSTITUTIONS DIV.,   § <br> RESPONDENT.   § | CIVIL NO. 3:19-CV-867-K-BK |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Rodney Eugene Smith's petition for habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed herein, the petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

On August 28, 2015, a jury convicted Smith of murder and assessed punishment at life imprisonment and a $1,000 fine. *The State of Texas v. Rodney Eugene Smith*, No. F14-75894-M (194th Jud. Dist. Ct., Dallas Cty., Tex., August 28, 2015); Doc. 2 at 2. The judgment was affirmed on appeal and in post-conviction proceedings, culminating with the denial of Smith's petition for writ of habeas corpus by the Texas Court of Criminal Appeals (TCCA) on January 16, 2019. *See* Doc. 2 at 3-4; *Smith v. State*, 05-15-01191-CR, 2017 WL 462345 (Tex. App.—Dallas Jan. 31, 2017); *Ex parte Smith*, WR-88,068-01, 2018 WL 1101378 (Tex. Crim. App. Feb.

28, 2018). On April 9, 2019, Smith filed this federal *pro se* habeas petition, alleging actual innocence, ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct. Doc. 3 at 6-7.

### II. STANDARD OF REVIEW

The role of federal courts in reviewing habeas corpus petitions by state prisoners is exceedingly narrow; a federal court does not sit as super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right, *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993), and federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see also Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). To obtain habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562

2

U.S. 86, 102-03 (2011). Stated differently, a petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

A state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

### III. ANALYSIS

#### A. Actual Innocence

Smith argues that he is "factually" innocent. Doc. 2 at 6; Doc. 19 at 2-3. He relies on an affidavit of Dr. Harry J. Bonnell, who opines that the autopsy findings were consistent with Smith's claim of self-defense and that the testimony of Dr. Ventura, the State's expert witness, was inaccurate and "should have been crossed by defense attorney if he were knowledgeable[ ] or had been educated by an expert." Doc. 19 at 15. Defendant clarifies in his reply that "he is

not claiming 'Actual Innocence,' [rather that] he acted in 'Self-Defense.'" Doc. 19 at 3. Nevertheless, to the extent Smith's argument can be construed as an attempt to assert a freestanding claim of actual innocence—untethered to any underlying constitutional violation—it is not cognizable in a § 2254 action. *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("actual innocence is not an independently cognizable federal-habeas claim").

### B. Ineffective Assistance of Counsel

Smith alleges his counsel provided ineffective assistance (IA) by failing to adequately investigate or obtain the testimony of an expert witness in pathology. Doc. 2 at 6. He argues *in toto*:

> Counsel failed to challenge the state's expert and failed to prepare or obtain any expert witnesses to challenge the expert testimony of pathologist[] Dr. Means or Dr. Ventura[,] who provided false testimony in conflict with the autopsy photos. The available expert[']s forensic testimony would have contradicted the State's pathologist on the autopsy findings[.]

Doc. 2 at 6.

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Under *Strickland's* prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability

4

sufficient to undermine confidence in the outcome. *Id.* Additionally, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A petitioner must "affirmatively prove, not just allege, prejudice." *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 691.

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance, [*Strickland*, 466 U.S. at 689], through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted). Considering the deference afforded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

To prevail on his claim that counsel failed to adequately investigate, Smith must demonstrate with specificity both what the investigation would have revealed and how it would have benefitted him. *See United States v. Curtis*, 769 F.3d 271, 276-78. (5th Cir. 2014). Here, as in his state habeas application, Smith appears to rely exclusively on the Affidavit of Dr. Harry J. Bonnell, M.D. Doc. 19 at 12-16. Based on his post-trial review of (1) the state medical examiner's autopsy and gun-shot residue reports, (2) the trial court record, including testimony and exhibits, and (3) autopsy and crime scene photos, Dr. Bonnell's avers that if he had been called to testify to testify at Petitioner's trail, he would have opined that:

> [T]he autopsy findings are consistent with the narrative of the defendant as to what happened and the testimony by Dr. Ventura was inaccurate and should have been crossed by defense attorney if he were knowledgeable, or had been educated by an expert
>
> Had I been consulted by defense prior to trial, I would have been available to consult and provide trial testimony as required, and I am still available if needed.

5

Doc. 19 at 15-16.

However, the state habeas court and the TCCA (adopting the findings of the trial court) rejected Smith's claim that counsel was ineffective for failure to investigate, finding credible the affidavit of Smith's trial counsel. Doc. 15-29 at 36-41; *see also* Doc. 19 at 17-19 (counsel's affidavit). The state courts' credibility determination is a factual finding entitled to the presumption of correctness, absent rebuttal by clear and convincing evidence, which Smith has failed to provide. 28 U.S.C. § 2254(e)(1); *see also Trottie v. Stephens*, 720 F.3d 231, 243-44 (5th Cir. 2013) (holding a state habeas court's express reliance upon a trial counsel's affidavit to reject an ineffective assistance of counsel claim was a credibility determination to which the federal habeas court was required to give deference).

As recounted by the state habeas court, Smith's counsel averred that this was a self-defense case. Doc. 15-29 at 36. The state's expert witnesses, Dr. Mean and Dr. Ventura, testified consistent with the autopsy report which detailed the number of injuries, the damage caused by the injuries, and the cause of death. Doc. 15-29 at 37. However because neither State expert provided testimony going to the issue of self defense, there was no need to challenge them on that point. Doc. 15-29 at 37; *see also* Doc. 19 at 17 (the State's experts "provided no information as to whether this was or was not self defense"). Further, Smith admitted that he went to the decedent's house with a firearm, Doc. 15-29 at 41, and never denied making incriminating statements during subsequent, recorded phone calls from the jail, including (as to the offense of conviction), "I knew what I was doing when I went and did it." Doc. 15-29 at 38. Indeed, the only evidence that supported Smith's version of events was Smith's testimony. Doc. 15-29 at 41.

6

In finding that Smith's counsel was not deficient in his performance, the state habeas court noted that, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Doc. 15-29 at 41 (citing *Strickland*, 466 U.S. at 690-91). To the extent Smith's counsel determined no further investigation was necessary, the state habeas court found that determination reasonable. Further, Smith does not establish that expert testimony or further investigation would have caused the result of the proceedings to have been different. Doc. 15-29 at 40. Indeed, his counsel avers that, except for his own account, Smith never provided information or witnesses to confirm his version of events. Doc. 15-29 at 38. *See Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (allegations of a counsel's failure to investigate must include with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial"). Upon review, this Court concludes that the state court's findings as to Smith's failure to investigate claim are not an unreasonable application of *Strickland*.

The state habeas court also correctly rejected Smith's claim that counsel was ineffective for failing to retain an expert to rebut those of the state on the issue of self-defense—also crediting the substance of trial counsel's affidavit. Again, Smith's counsel noted that there was no need to call an expert to challenge the State's expert witness testimony because such testimony did not go to the issue of self-defense. Moreover, counsel's decision not to offer the testimony of an expert such as Dr. Bonnell, who could say only that his subsequent review of the state's autopsy findings indicated that there was nothing that *contradicted* Smith's claim of self-defense, can be deemed sound defense strategy. *Strickland*, 466 U.S. at 689; *Bell*, 535 U.S. at 689. As counsel obviously saw it, the case was straightforward: "As to the defense, which was prepared and put forth, there was not much to contest. This case a love triangle that ended

terribly. Kimberly Truesdale, the object of affection of both [Petitioner] and [the decedent], testified that on the day of the alleged murder, [Petitioner] told her via telephone he was going over to the home of [the decedent] and shoot him." Doc. 19 at 17-18; *see also* Doc. 15-29 at 37 (state habeas court summary of the same).

Smith's self-defense claim hinged solely on whether the jury believed his version of the events that occurred in the last moments of the decedent's life. Just like the state habeas court, this Court does not second-guess that approach.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134 (1982). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S., at 689.

*Burger v. Kemp*, 483 U.S. 776, 789 (1987) (internal citations modified).

Indeed, the state habeas court suggested that the expert testimony of Dr. Bonnell might well have contradicted Smith's version of the events:

> Dr. Bonnell opined that complainant that could have raised his arm in protection after being shot. The affidavit suggested that the complainant was no longer charging at applicant at the time applicant fired the second shot because his hands were covering his face. Conversely, applicant testified that complainant was still positioned directly over him with the knife after he fell to the ground with the gun. Applicant then testified that the second shot was the result of the impact of the floor on his hand and bottom while his finger was on the handgun's trigger. Dr. Bonnell's testimony would not have benefitted [Petitioner's] claim of accidental discharge and self-defense.

Doc. 15-29 at 45.

Accordingly, the state habeas court determined that Smith's counsel's theory of self-defense did not require consultation with experts or the introduction of expert evidence. And,

8

even if Smith had shown deficient performance, the state habeas court noted that he failed to establish prejudice under the second prong of *Strickland*.

Under the doubly deferential standard for reviewing IAC claims in federal habeas cases, the state trial court's application of *Strickland* was reasonable as to the failure-to-obtain-an-expert ground for relief. "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Richter*, 562 U.S. at 106. The state habeas court's finding, in reliance on *Harrington,* that Petitioner's "defense did not call for the rebuttal of the State's expert witnesses," was not contrary to federal law or an unreasonable application of *Strickland*. Thus Petitioner's claim lacks merit.

### C. Prosecutorial Misconduct

In his third ground for relief, Smith contends that the prosecution committed misconduct by knowingly permitting state's witnesses to give false testimony. Although Petitioner's federal habeas petition is short on specifics, in his corresponding state claim, he refers specifically to the testimony of Dr. Ventura and Detective Shelton.

It is true that the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 154 (1972). However, to prove a due process violation in such a case, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Smith asserted in the state habeas proceedings that state witness Dr. Ventura testified that there was no stippling on complainant's wounds, contrary to Dr. Bonnell's subsequent opinion. Smith also suggested that Dr. Ventura testified during one portion of the trial that the gunshot to

9

the decedent's face traveled up into the brain, but in subsequent testimony that the bullet traveled front to back with no vertical deviation. Smith submits that these inconsistent or contradicted statements demonstrate perjury and therefore a due process violation. However, the state habeas court rightfully disagreed, finding that any contradictions or inconsistencies in Dr. Ventura's testimony did not amount to perjury, but amounted to questions of credibility for the jury to decide. Doc. 15-29 at 49. This conclusion was not an unreasonable application of clearly established federal law. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (contradictions in testimony are to be resolved by jury and do not amount to perjury).

Further, as the state habeas court also held, Smith failed to show that any inconsistency or contradiction in Dr. Ventura's testimony was material to the guilt-innocence or punishment phase of the trial. *See United States v. Alanis*, 88 F. App'x. 15, 23 (5th Cir. 2004) ("Perjured testimony is material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'") (quoting *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998)) (citations and internal quotation marks omitted)). As thoroughly discussed here, there was no question that the decedent died of gunshot wounds inflicted by Petitioner, and Dr. Ventura's testimony was germane only to the decedent's cause of death and not contradictory of Petitioner's claim of self-defense.

The state habeas court also rejected Smith's argument that Detective Shelton falsely testified at trial that he is allowed to "lie to achieve the results he needs," Doc. 2 at 7, finding that Smith's allegations were conclusory and did not establish what specific statements of

Shelton were false, Doc. 15-29.[1]  Smith fails to show that the state habeas court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C.  § 2254(d); *see also Koch*, 907 F.2d at 530.  (mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim).

Finally, for the first time in his reply brief, Smith appears to claim that the prosecution withheld evidence—specifically, page 2 of the "Gun-shot Residue Report."  Doc. 19 at 2.  The Court notes that its briefing order specifically prohibits new allegations of fact or grounds for relief in reply briefs.  Doc. 6 at 2.  In any event, Smith failed to exhaust this claim in state court. His failure to exhaust state court remedies constitutes a procedural default that bars this Court from considering his claim.  *Ries v. Quarterman*, 522 F.3d 517, 523-24 (5th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  Moreover, Smith has not alleged or shown cause for the default or actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claim.  *See Coleman*, 501 U.S. at 750; *see also Martinez v. Ryan*, 566 U.S. 1, 13 (2012) ("only where a prisoner is impeded or obstructed in

---

[1] This Court's review of the trial testimony of Detective Shelton reveals no such testimony.  The only thing that even comes close is a brief exchange between Shelton and defense counsel on cross examination:

> Q … When you interview a suspect, the law allows you to lie to a suspect; is that correct?
> A That's correct.
> Q And the law allows you to mislead them; is that's correct?
> A That's correct.
> Q And the law allows you to use deception and trickery with a suspect; is that correct?
> A. Yes, sir.

Doc. 15-8 at 72-73.

complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default"). Accordingly, to the extent Smith is claiming the State withheld evidence from him and that this entitles him to habeas relief, this claim should be dismissed as unexhausted and procedurally barred.[2]

### D. Judicial Misconduct

Finally, Smith's fourth ground for relief posits that the trial judge was biased against him because he improperly allowed a photo of the decedent to be displayed throughout the trial over objection and informed the jury that "in his opinion the decedent's photograph was worthy of special treatment." Doc. 2 at 7. Smith also claims that the judge acted as an "adversarial advocate and assisted the prosecution in presenting its case to the jury." Doc. 2 at 7.

To secure relief on a due process claim premised on the judge's bias, a petitioner is required to establish that a genuine question exists concerning the judge's impartiality. *Bigby v. Dretke*, 402 F.3d 551, 558-59 (5th Cir. 2005). All cases should begin with the presumption that the judicial officer is unbiased, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), and "judicial rulings alone almost never constitute a valid basis or partiality motion." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Nor do intemperate remarks, including those that are critical or disapproving of, or even hostile to, counsel and the parties, constitute actual bias unless they display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

---

[2] Courts can raise procedural bars *sua sponte* but only after giving the petitioner an opportunity to respond. *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998). Here, Smith will have a chance to oppose the procedural default ruling during the 14-day period for filing objections to the findings, conclusions and recommendation. See *Maguoirk*, 144 F.3d at 359 (magistrate judge's finding and recommendation provided habeas petitioner reasonable opportunity to oppose application of the procedural default doctrine).

Here, the state habeas court rejected Smith's judicial bias claim on procedural grounds, namely, because the issue "in substance was previously raised and rejected on direct appeal under [Petitioner's] claim that the judge's decision over objection to allow a photograph of the [decedent] denied his due process right to an impartial judge." Doc. 15-29 at 51. The state appellate court rejected Smith's judicial bias claim on the merits, observing that "a trial court's inherent power includes broad discretion over the conduct of its proceedings." *Smith*, 2017 WL 462345, at *3. (citing *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003) (orig. proceeding) (footnote omitted).

To the extent Smith intends to challenge the trial court's admission of certain photographic evidence at trial (already rejected on direct appeal), such claim is not cognizable in this federal habeas action. "Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)).

With respect to his claim of judicial misconduct, Smith fails to show that the state habeas court's determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law sufficient to warrant habeas relief under 28 U.S.C. § 2254(d)(1).

### E. Evidentiary Hearing

In his reply brief, Smith requests an evidentiary hearing "to resolve the factual disputes." Doc. 19 at 2. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) ( "[t]he same rule necessarily applies to a federal

court's review of purely factual determinations under § 2254(d)(2)"). Here, as in *Pinholster*, Smith's habeas petition concerns only claims under Section 2254(d)(1) that were adjudicated on the merits in state court. As discussed above, Smith cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Therefore, Smith is not entitled to an evidentiary hearing.

### IV. CONCLUSION

For the foregoing reasons, Smith's habeas corpus petition should be **DENIED**, and this case should be **DIMMISSED WITH PREJUDICE.**

**SO RECOMMENDED** on February 9, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).